UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| DREW MORGAN and MARY HARGIS,<br><br>Plaintiffs,<br><br>v.<br><br>MATT G. BEVIN, in his official capacity as Governor of Kentucky,<br><br>Defendant. | Case No. _____<br><br>*Electronically Filed* |

## VERIFIED COMPLAINT

### I.  Preliminary Statement

1. In this 42 U.S.C. § 1983 official capacity suit, Plaintiffs seek declaratory and prospective injunctive relief challenging, on First Amendment free speech grounds, Defendant's policy of permanently blocking individuals from engaging in speech on his official social media accounts. Specifically, Governor Bevin has created official Facebook and Twitter accounts for the dual purposes of communicating information to, and inviting comments from, the general public. These accounts are open to the public, and anyone with a Twitter or Facebook account may view the content and comments posted there and post comments themselves. In hundreds of instances, however, the Governor has "blocked" individuals, including Plaintiffs, from these public forums thus permanently barring them from being able to post comments and, in the case of Twitter, from seeing the Governor's posts or the comments of others.

Case: 3:17-cv-00060-GFVT Doc #: 1 Filed: 07/31/17 Page: 2 of 16 - Page ID#: 2

Plaintiffs are Kentucky residents who have, in the past, viewed the Governor's official social media sites and posted non-threatening, non-obscene, and non-defamatory comments about matters of public concern on those sites. Both Plaintiffs have also been permanently blocked from one of the Governor's social media sites thus preventing them from contributing to the political dialogue occurring in those public forums and, in the case of Twitter, viewing the content posted by the Governor or the comments of others.

Plaintiffs allege that even if Defendant (or his agents) blocked them from the Governor's official Twitter and/or Facebook account for reasons unrelated to the viewpoints they expressed in those public forums, the permanent ban on their ability to comment (or view the posts and comments of others on Twitter) nonetheless violates their First Amendment speech rights. Plaintiffs thus seek a declaration that the Governor's policy or practice of permanently banning individuals from being able to comment on his social media platforms is an unconstitutional speech restriction, both facially and as-applied. Plaintiffs further seek preliminary and permanent prospective injunctive relief barring the Governor from future enforcement of the challenged policy, including reinstating access to the public forums to the hundreds of individuals, including Plaintiffs, who have been blocked pursuant to the policy.

## II. Jurisdiction and Venue

2. The Court has jurisdiction over this case under 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b), because all parties reside in Kentucky, and a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Kentucky.

2

### III. Parties

4. Plaintiff Drew Morgan is an adult citizen of Kentucky, residing in Jefferson County, Kentucky. Plaintiff is a registered Twitter user whose Twitter username is @GoBigBlueDrew.

5. Plaintiff Mary Hargis is an adult citizen of Kentucky, residing in Rowan County, Kentucky. Plaintiff is a registered Facebook user whose Facebook profile is Mary Hargis.

6. Defendant Matt Bevin, in his official capacity as Governor of Kentucky, is charged with enforcing the laws of the state of Kentucky. Defendant also serves as the state official with final policymaking authority over the content of, and individuals' access to, his official social media accounts — @GovMattBevin (Twitter) and GovMattBevin (Facebook). The Defendant is a resident of Jefferson County, Kentucky, and his office is located in Franklin County, Kentucky.

### IV. Factual Allegations

*Social Media*

7. Twitter is an online social media network that enables individuals "to communicate and stay connected through the exchange of quick, frequent messages." These messages are called Tweets and may consist of "photos, videos, links and up to 140 characters of text." Twitter, *New User FAQs*, https://support.twitter.com/articles/13920#.

8. Individuals who register a Twitter account may post Tweets, comment on others' Tweets, and view the comments posted by others. Unregistered users, however,

3

may only view the public Tweets posted by others; they are unable to post Tweets themselves, comment on others' Tweets, or view the comments posted by others.

9. Registered Twitter users agree to the site's Terms of Service, which includes agreements to not "make threats of violence or promote violence", "incite or engage in the targeted abuse or harassment of others", or "post content that is: hate speech, threatening, pornographic, incites violence, or contains nudity or graphic or gratuitous violence." Twitter, *Twitter Rules*, https://support.twitter.com/articles/18311#.

10. Registered Twitter users may also "block" other accounts. When an individual blocks other Twitter users from viewing her account, several restrictions on their ability to interact are imposed, including, *inter alia*:

    a) neither the Twitter account that has been blocked nor the account that blocked it may "follow" the other;

    b) Tweets from a blocked account will not appear in the user's timeline;

    c) blocked users cannot send a Direct Message to the account that blocked them; and

    d) blocked users do not receive an alert notifying them that their account has been blocked, but a notice will appear informing them of that fact if they visit the profile that blocked them. Twitter, *Blocking Accounts on Twitter*, https://support.twitter.com/articles/117063#.

11. Facebook is an online social media platform that allows users to create their own individual user profiles for the purpose of connecting and interacting with others.

4

12. In addition to individual profiles, users may also create "pages" to promote brands, places, organizations, and public figures. "Official pages" are those administered "only by an authorized representative of that brand, entity (place or organization) or public figure." And the Facebook Page Terms make clear that "[c]ontent posted to a Page is public and viewable by everyone who can see the Page." Facebook, *Facebook Pages Terms*, https://www.facebook.com/page_guidelines.php.

13. Facebook users agree to the site's Terms of Service, which include agreements to not "bully, intimidate, or harass any user" or post content that is: hate speech, threatening, pornographic, incites violence, or contains nudity or graphic or gratuitous violence. Facebook, *Statement of Rights and Responsibilities*, https://www.facebook.com/legal/terms.

14. The Facebook Terms of Service also stipulate that users will not "post content *or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law.*" *Id.* (emphasis added).

15. A Facebook feature that is available to every user is the ability to "block" (or "ban") other users from viewing or interacting with one's Facebook profile or page.

16. Blocking another Facebook user from one's personal profile entails a number of consequences, such as preventing the blocked user from being able to see things posted on, or post comments to, one's profile.
Facebook, *What is blocking and how do I block someone?*,
https://www.facebook.com/help/1000976436606344?helpref=hc_global_nav# (last visited June 29, 2017).

5

17. Similarly, "banning" an individual from one's Facebook *page* (as opposed to blocking a user from one's Facebook *profile*) imposes limits on the blocked user. For example, although the banned user may still "share content from [the] Page to other places on Facebook", they will "no longer be able to publish to [the] Page, like or comment on [the] Page's posts." Facebook, *How do I ban or unban someone from my Page?*, https://www.facebook.com/help/185897171460026?helpref=faq_content (last visited June 29, 2017).

18. A user may not disable the comments on a Facebook page, but may "hide or delete individual comments." Facebook, *Banning and Moderation*, https://www.facebook.com/help/248844142141117/?helpref=hc_fnav (last visited July 26, 2017).

19. A user may also "proactively moderate comments and posts by visitors by blocking words and turning on the profanity filter" for the page. *Id.*

***Defendant's Official Social Media Forums***

20. At all relevant times, Governor Bevin acted under color of state law.

21. In April of 2015, the official Twitter account of Governor Matt Bevin — @GovMattBevin — was created.

22. The @GovMattBevin Twitter account is a "verified" account, *i.e.* Twitter has affixed its "blue verified badge" to the account to let users know that the account is of public interest. Twitter, *About Verified Accounts*, https://support.twitter.com/groups/31-twitter-basics/topics/111-features/articles/119135-about-verified-accounts# (last visited July 26, 2017).

6

23. The @GovMattBevin Twitter account is an open account that is viewable and accessible to any and all registered Twitter users who have not been blocked from viewing the account.

24. The @GovMattBevin Twitter account is used by the Defendant, in his official capacity, to communicate information to (and receive comments from) individuals about a variety of topics, such as local, state, and national developments, politics, and about his administration's policies.

25. The @GovMattBevin Twitter account does not contain a disclaimer or otherwise provide notice of what topics or subject matter may be discussed, what speech is subject to removal, or what online conduct may result in being permanently blocked.

26. Registered Twitter users who are not blocked from viewing the @GovMattBevin Twitter account may: view the Tweets that are posted on that account; view the comments that are posted to the account by others; post their own comments; and share, or re-Tweet, posts made to the Twitter account.

27. Registered Twitter users who have been blocked from the @GovMattBevin Twitter account, as well as individuals who do not have a Twitter account, are blocked from viewing the content of any comments posted on that account and they are unable to post comments themselves.

28. Since its inception, Defendant has "blocked" more than two hundred and ninety (290) individuals, including Plaintiff Drew Morgan, from his @GovMattBevin Twitter account.

29. Plaintiff Morgan is an adult resident of Kentucky and a registered Twitter user whose username is @BigBlueDrew.

30. Plaintiff Morgan has used his Twitter account in the past (and intends to continue to use it in the future) for, *inter alia*, engaging in protected political speech.

31. In February 2017, Plaintiff Morgan commented on a number of Governor Bevin's Twitter posts inquiring about the status of the Governor's then-overdue property taxes. [*See attached* Exhibit 1.]

32. Plaintiff Morgan's comments on Defendant's official Twitter account were not obscene, abusive, defamatory, or otherwise in violation of Twitter's Terms of Service. [*Id.*]

33. On February 8, 2017, Defendant Bevin (or someone acting on his behalf) permanently blocked Plaintiff Morgan from the Governor's official Twitter account. [*Id.*]

34. Since being blocked on February 8, 2017, Plaintiff Morgan has been unable to: engage in political speech on Defendant's official Twitter account; view or share the Governor's posts; or view (or respond to) the comments and political dialogue of others who post comments.

35. Plaintiff wishes to (and but for having been blocked would) again view the information disseminated on Governor Bevin's official Twitter account and the comments posted there by others, as well as post non-threatening, non-obscene, non-abusive political speech.

36. All of the individuals whose Twitter accounts have been blocked from the @GovMattBevin Twitter account, including Plaintiff Morgan, are unable to use their blocked accounts to: view the comments posted on the @GovMattBevin account, "like" any of the content on the @GovMattBevin account, or post their own comments on the @GovMattBevin account.

8

37. In 2015, the official Facebook Page of Governor Matt Bevin — https://www.facebook.com/GovMattBevin/ — was created.

38. The GovMattBevin Facebook Page is a "verified" page, *i.e.* Facebook has affixed its blue badge to the page signifying that it is an authentic page of a public figure, media company, or brand. Facebook, *What is a Verified Page or Profile?*, https://www.facebook.com/help/196050490547892 (last visited July 26, 2017).

39. The GovMattBevin Facebook Page is open and viewable to all registered Facebook users (regardless of whether they have been banned from the Page) as well as to individuals who do not have a Facebook account.

40. The GovMattBevin Facebook Page is used by the Defendant, in his official capacity, to communicate information to (and receive comments from) individuals about a variety of topics, such as local, state, and national developments, politics, and about his administration's policies.

41. The GovMattBevin Facebook Page does not contain a disclaimer or otherwise provide notice of what topics or subject matter may be discussed, what speech is subject to removal, or what online conduct may result in being permanently blocked.

42. However, registered Facebook users who have been banned from the GovMattBevin Facebook Page (and individuals who do not have a Facebook account) may not post comments on the Page or "like" any of the content (or comments) on the page.

43. Since its inception, Defendant has "banned" more than three hundred (300) individuals, including Plaintiff Hargis, from his GovMattBevin Facebook Page.

44. Plaintiff Mary Hargis is an adult resident of Kentucky and a registered Facebook user whose profile is Mary Hargis.

45. Plaintiff Hargis has used her Facebook account in the past (and intends to continue to use it in the future) for, *inter alia*, engaging in protected political speech.

46. In late 2016 or early 2017, Plaintiff Hargis posted comments on a post by Governor Bevin criticizing his right-to-work policies. The comment was not obscene, abusive, defamatory, or otherwise in violation of Facebook's Terms of Service.

47. On another occasion in late 2016, Plaintiff Hargis posted comments on a post by Governor Bevin criticizing his skilled labor apprenticeship program. The comment was not obscene, abusive, defamatory, or otherwise in violation of Facebook's Terms of Service.

48. In July, 2017, Plaintiff Hargis attempted to post another non-obscene, non-abusive, and non-defamatory political comment on one of Governor Bevin's posts on his official Facebook page, but she was prevented from doing so because she had been permanently blocked from the Facebook account.

49. Because she is permanently blocked from Defendant's official Facebook page, Plaintiff Hargis is unable to: engage in political speech on Defendant's official Facebook page; "like" the content on that forum or the comments posted there by others; or respond to the comments posted by others.

50. Plaintiff wishes to (and but for having been blocked would) again post non-threatening, non-obscene, non-abusive political speech in response to the content (and comments) posted on Governor Bevin's official Facebook page.

51. All of the individuals whose Facebook profiles have been blocked from the GovMattBevin Facebook page, including Plaintiff Hargis, are unable to use their blocked accounts to post comments on the Page or "like" any of the content (or comments) on the page.

52. Both the @GovMattBevin Twitter account and the GovMattBevin Facebook page are government-created public forums set aside for individuals to engage in (and receive) speech.

53. Neither the @GovMattBevin Twitter account nor the GovMattBevin Facebook page set limits on who may use the forum, or the topics that may be discussed, beyond those set by the platforms' respective Terms of Use.

54. A spokesperson for the Governor has commented to the media about the Governor's policy for blocking users from his social media accounts, stating that:

> Gov. Bevin is a strong advocate of constructive dialogue, and he welcomes thoughtful input from all viewpoints on his social media platforms. Unfortunately, a small number of users misuse those outlets by posting obscene and abusive language or images, or repeated off-topic comments and spam. Constituents of all ages should be able to engage in civil discourse with Governor Bevin via his social media platforms without being subjected to blatant vulgarity or abusive trolls.

Posting of Woody Maglinger to Charles Ornstein, @charlesornstein, https://twitter.com/charlesornstein/status/874709491983495168 (June 13, 2017).

55. Defendant's official Twitter and Facebook accounts constitute designated public forums.

56. Defendant's policy or practice of permanently blocking individuals, including Plaintiffs, from his official Facebook and Twitter accounts is an

11

unconstitutional restriction on speech that is not narrowly tailored to serve any permissible governmental interest.

57. The infringement on Plaintiffs' First Amendment speech rights constitutes an irreparable and ongoing harm that Plaintiffs are suffering, and will continue to suffer, for which they have no adequate remedy at law.

## V. CLAIMS FOR RELIEF

### 1. First Cause of Action - First Amendment

58. The allegations of paragraphs 1 through 57 are incorporated as though fully set forth herein.

59. On its face, Defendant's official capacity act, practice and/or policy of permanently barring individuals and organizations from being able to post comments on his official Twitter and Facebook accounts is an unconstitutional restriction on their right to engage in speech (and, with respect to Twitter, to receive information) in those public forums either because it is an unconstitutional content-based restriction that does not serve a compelling governmental interest and lacks narrow tailoring, or because it is a content-neutral restriction that does not serve a significant governmental interest, lacks narrow tailoring, and fails to leave open ample alternatives for communication.

60. On its face, Defendant's official capacity act, practice and/or policy of permanently barring individuals and organizations from being able to post comments on his official Twitter and Facebook accounts is an unconstitutional restriction on their right to engage in speech in those public forums because it is an unlawful prior restraint on speech.

12

## 2. Second Cause of Action - First Amendment

61. The allegations of paragraphs 1 through 60 are incorporated as though fully set forth herein.

62. As-applied, Defendant's official capacity act, practice and/or policy of barring Plaintiffs from being able to post comments on his official Twitter and Facebook accounts is an unconstitutional restriction on their right to engage in speech (and, with respect to Twitter, to receive information) because it is a content-based restriction on speech that does not serve a compelling governmental interest and lacks narrow tailoring, or because it is a content-neutral restriction that does not serve a significant governmental interest, lacks narrow tailoring, and fails to leave open ample alternatives for communication.

63. As-applied, Defendant's official capacity act, practice and/or policy of permanently barring Plaintiffs from being able to post comments on his official Twitter and Facebook accounts is an unconstitutional restriction on their right to engage in speech in public forums because it is an unlawful prior restraint on Plaintiffs' future speech.

**WHEREFORE**, the Plaintiff requests that this Court:

1. Declare the Defendant's official-capacity act, practice and/or policy of permanently banning individuals and organizations from posting comments on his official Twitter and Facebook forums is an unconstitutional speech restriction, both facially and as-applied, in violation of the First and Fourteenth Amendments.

2. Issue preliminary and permanent prospective injunctive relief barring Defendant from enforcing the challenged practice and/or policy of permanently barring

13

individuals and organizations from being able to post comments on his official Twitter and Facebook forums, both facially and as-applied, and compelling Defendant to unblock everyone, including Plaintiffs, that have been affected by the challenged policy.

3. Award Plaintiffs their costs, including reasonable attorney fees, pursuant to 42 U.S.C. § 1988; and

4. Grant any additional relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s William E. Sharp
William E. Sharp, Legal Director
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, Kentucky 40202
(502) 581-9746
(502) 589-9687 (fax)
sharp@aclu-ky.org

/s Heather L. Gatnarek
Heather L. Gatnarek, Legal Fellow
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, Kentucky 40202
(502) 581-9746
(502) 589-9687 (fax)
heather@aclu-ky.org

*Attorneys for Plaintiffs*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I make the following declaration under penalties of perjury:

I verify that I have read the complaint in this case and that the facts alleged in it are true, to the best of my knowledge, information and belief.

_C. Drew Morgan_
Drew Morgan

_7-31-17_
Date

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I make the following declaration under penalties of perjury:

I verify that I have read the complaint in this case and that the facts alleged in it are true, to the best of my knowledge, information and belief.

_____
Mary Hargis

7/28/17
Date