UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:17-CV-00060-GFVT-EBA

DREW MORGAN *and* MARY HARGIS,　　　　　　　　　　　　　　　PLAINTIFFS,

V.　　　　　　**MEMORANDUM OPINION AND ORDER**

MATT G. BEVIN, *in his official capacity*
*as Governor of Kentucky*,　　　　　　　　　　　　　　　　　　DEFENDANT.

*** *** *** ***

## I.　INTRODUCTION

This matter comes before the Court upon Plaintiffs Drew Morgan and Mary Hargis's ("Plaintiffs") Motion to Compel Governor Matt G. Bevin ("Defendant") to produce certain categories of documents, as well as a limited deposition of the Defendant [R. 41]. This matter is ready for ruling, following Plaintiffs' Reply [R. 46] to Defendant's Response in Opposition to Plaintiffs' Motion to Compel [R. 45]. All discovery disputes have been referred to the undersigned for a decision pursuant to 28 U.S.C. § 636(b)(1)(A). [R. 35 at 2-3 ¶ 3(c)]. Accordingly, having considered the matter fully, and being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiffs' Motion to Compel [R. 41] be **GRANTED IN PART AND DENIED IN PART. IT IS FURTHER ORDERED** that Defendant's Motion for Oral Argument [R. 47] be **DENIED**.

## II.　FACTS AND PROCEDURAL HISTORY

This action arises from Plaintiffs' allegations that their First Amendment rights under the freedom of speech clause were violated as a result of their social media accounts being

1

blocked, or banned from accessing, Defendant's official Twitter and official Facebook pages. Plaintiffs allege that their postings were "non-threatening, non-obscene, and non-defamatory comments about matters of public concern," and thus, Defendant's basis for blocking Plaintiffs from his official accounts were "unrelated to the viewpoints they expressed in these public forums." [R. 1 at 2]. Plaintiffs have pled two claims: (1) that the Governor's practice and/or policy of blocking users from his official Twitter and Facebook accounts is facially unconstitutional; and (2) an as-applied challenge resulting from the Plaintiffs being blocked. [*Id.* at 12-13].

On July 12, 2018, Plaintiffs served their First Set of Discovery Requests [R. 41-1-]. On August 22, 2018, Defendant served his Responses to Plaintiffs' First Set of Discovery Requests [R. 41-2]. The next day, on August 23, 2018, Defendant supplemented his response to Interrogatory Number 2. [*Id.* at 20]. As a result of the Governor's objections and his refusal to produce any of the requested documents, Plaintiff alleges that the parties' "ultimately reached an impasse," and filed this underlying motion to resolve the ongoing dispute [R. 41 at 2].

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 26(b)(1) provides that — unless otherwise limited — "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The information sought need not be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence. *Id*. This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of

discovery, however, is not without limitation. It is "well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.* (citing Fed. R. Civ. P. 26(b); *H. L. Moore Drug Exch., Inc. v. Smith, Kline and French Lab.*, 384 F.2d 97 (2d Cir. 1967)).

Where a party refuses to provide information requested by any other party, which is thought by the requesting party to be within the scope of Fed. R. Civ. P. 26(b)(1), the requesting party may move the court in which the action is pending to compel disclosure of the requested information. Fed. R. Civ. P. 37(a)(3)(B). Such a motion to compel generally may be filed where a party has failed to provide mandatory disclosure; failed to answer or admit an interrogatory or request for admission; or failed to produce discoverable information, materials, or documents — electronic or otherwise. *See generally* Fed. R. Civ. P. 37. A failure to disclose, answer or admit, or produce includes disclosures, answers or admissions, or productions that are "evasive or incomplete." Fed. R. Civ. P. 37(a)(4). Prior to so moving, however, a party seeking to compel disclosure or discovery must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Should the court determine the matters sought to be compelled fall within the scope of Fed. R. Civ. P. 26, the motion shall be granted.

## IV. **DISCUSSION**

A. Plaintiffs' Motion to Compel Production of Documents under Rule 26

The three sets of documents that Plaintiffs have requested Defendant to produce, and that are at issue here, fall into three categories: 1) screenshots of blocked individuals' accounts; 2) emails and text messages about Defendant's office policy and/or practice of blocking accounts from his official pages; and 3) a Facebook keyword filter list. Plaintiffs argue that production of these documents is critical because, "[a]t the heart of this case" is whether Defendant's official Facebook and Twitter accounts are either classified as designated public fora or limited public fora [R. 41 at 3].

Plaintiffs argue that Defendant's social media accounts constitute designated public fora, and thus, must be scrutinized under a higher standard of review than under classification of limited public fora. Accordingly, if labeled content-based speech, Defendant's accounts and his policy of regulating speech by blocking individuals from his pages, "must be necessary to serve a compelling state interest and be narrowly drawn to achieve that interest." [R. 41 at 3 ¶ 2 (citing *Miller v. Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010))]. In the alternative, if labeled content neutral, the restrictions "must serve a significant government interest, be narrowly tailored to achieve that interest, and leave open ample alternatives for communication." [*Id.*]. On the other hand, Defendant argues that his social media pages serve as limited public fora; thus, a review of Defendant's restrictions of speech on his accounts are not subject to any type of strict scrutiny review. Instead, "such restrictions 'must not discriminate on the basis of viewpoint, and [they] must be reasonable in light of the purpose served by the forum.' " [*Id.* at 14 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001))].

The three categories of documents that Plaintiffs seek to compel, they argue, are directly relevant to its first claim, which is a facial challenge to Defendant's official policy

4

and/or practice of regulating his social media accounts. [R. 41 at 3]. Additionally, Plaintiffs argue that these documents are also relevant for properly determining whether Defendant's official social Twitter and Facebook accounts should be reviewed under the analysis of either designated public fora or that of limited public fora [*Id.* at 4]. In turn, Defendants have argued that the three categories of documents have no relation to Plaintiffs' claims, and thus, are "outside the permissible scope of discovery." [*Id.* at 4 (citing Fed. R. Civ. P 26(b)(1))].

1. **Screenshots of Comments and/or Replies of Blocked Accounts**

The screenshots at issue concern "[t]he Governor's Office's [possession of] screenshots of many comments that resulted in an account being banned." [R. 41-2 at 8-9]. Defendant does not dispute the existence of the screenshots, but instead, acknowledges that several representatives from Defendant's office have been deposed about its current practice of screenshotting the blocked users' comments or replies. [R. 45 at 7]. Further, Defendant argues that, because the screenshots are from accounts *other than* Plaintiffs' accounts, they are irrelevant to *both* of Plaintiffs' claims. [*Id.* at 6-8].

Rule 26(b) establishes the scope of discovery, and thus, governs the analysis of the Motion to Compel. Under Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery *need not be admissible* in evidence *to be discoverable*.

Fed. R. Civ. P. 26(b)(1) (emphasis added). In this case, the only objection that Defendant raises against the production of the screenshots is that it is *irrelevant* to Plaintiffs' claims and

5

defenses, since the screenshots would not provide any information related to Plaintiffs' accounts, nor offer any indication as to why their accounts were blocked.

Defendant has failed to persuade the Court that the requested screenshots of the comments and/or replies of the other, blocked accounts would produce only irrelevant information. This lawsuit challenges Defendant's "act, practice and/or policy of permanently barring individuals and organizations from being able to post comments on [Defendant's] official Twitter and Facebook accounts." [R. 1 at 12]. In arguing that these documents fall within the parameters of discoverable materials, Plaintiffs argue that they "must be permitted an opportunity to explore the practices undertaken by the Defendant and his staff." [R. 46 at 3]. Plaintiffs contend that their challenge to Defendant's practice leads to a host of factual inquiries, which are directly relevant to the forum analysis, as well as the determination of the constitutionality of Defendant's practice. [R. 46]. Thus, any information that will enable Plaintiffs to develop a factual basis as to how Defendant and his office monitors other social media accounts, they argue, is instrumental and proportional to the needs of this case. Such information clearly, in the Court's view, falls within the broad scope of relevant, and thus, discoverable information.

The Court is well aware that discovery has ultimate and necessary boundaries. Though Defendant believes that Plaintiffs are on a fishing expedition, the Court disagrees. Plaintiffs are not seeking to amend their pleadings, nor are they seeking to turn this into a class action. In this instance, Plaintiffs have argued that the screenshots will be relevant to determining Defendant's practice of regulating speech, which is the focus of this lawsuit. Defendants have not asserted that any privilege exists, nor that responding in full to the Plaintiffs' disputed discovery request would be unduly burdensome and oppressive. In the Court's view,

Plaintiffs' request is not overly broad, but instead, reasonable in light of the First Amendment claims and defenses that are at stake.

For these reasons, Plaintiffs' motion to compel Defendant to produce the screenshots of comments and/or replies relating to the blocked individuals' accounts is **GRANTED**.

 2. **Emails and Text Messages About Defendant's Policy or Practice**

Next, Plaintiff seeks email and text message exchanges that are responsive to Plaintiffs' Request for Production Nos. 7, 8, and 15. These requests concern production of any forms of communications, which would shed light on Defendant's practice or policy of managing his social media pages [R. 41-2 at 13-14, 16]. Specifically, Plaintiffs request: 1) 10 emails relating to two email exchanges; and 2) 24 text messages, which concern seven text message exchanges [R. 41 at 5]. Much like the screenshots, Defendants have refused to produce these documents on the basis that they do not concern the blocking of Plaintiffs' accounts [R. 41-5 at 2]. In sum, Defendants have argued that the messages are irrelevant and have nothing to do with Plaintiffs' claims. This argument is unpersuasive.

Similar to the screenshots, the Court is under the impression that Plaintiffs' challenged discovery request clearly falls within the ambit of discoverable information: it is reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). In fact, it is yet to be determined whether or not Plaintiffs can ultimately prevail on the claims asserted in this action. Nonetheless, in this instance, it is immaterial that the email and text message exchanges do not relate to the blocking of Plaintiffs' accounts, especially since the communications amount to general discussions concerning Defendant's overall practice of blocking content on his social media pages.

Therefore, Plaintiffs' motion to compel Defendant to produce the withheld emails and text messages is **GRANTED**.

### 3. Facebook Keyword Filter List

Lastly, Plaintiffs seek to compel Defendant to produce a list of words in Facebook's "keyword filter function, which automatically hides from public view comments that contain specific words determined by [Defendant's] [o]ffice." [R. 41 at 5-6]. This request is directly responsive to Plaintiffs' Request for Production No. 17. [R. 41-2 at 16-17]. Defendant responded to this request, arguing that, although Defendant uses this word-filter function, "[t]he specific words used in the filter are not relevant." [*Id.* at 17]. Plaintiffs have requested this list on the basis that deposition testimony revealed that Defendant's office utilizes this function in order to regulate comments for compliance with their social media policy.

In essence, Defendant has explained that its office is in control of a filter, which "automatically prevents the posting of commentary that contains certain words, such as expletives and key words that most commonly appear in off-topic comments and spam." [R. 11 at 4]. Thus, when a comment falls under one of the categories of words that allegedly violates Defendant's social media policy, the comment appears "grayed out," and is screened by administrators of the respective page [R. 41 at 6]. Thereafter, if a member of Defendant's office deems the comment to have been contrary to Defendant's stated policy, a screenshot of the comment is taken. Defendant's only objection to production of this keyword list is that it is irrelevant, and bears no relation to Defendant's social media policy of blocking or banning a user's account. This Court disagrees.

At the heart of this case is the regulation of content on Defendant's social media pages. Defendant has undertaken the practice of "enforc[ing] a policy of disallowing comments that are obscene, abusive, clearly off topic, or spam." [R. 11 at 4]. In doing so, Defendant employs this keyword filter function in order to regulate compliance. If an administrator of the Facebook pages determines that the comment or reply is contrary to Defendant's policy, a

screenshot of the comment or reply is taken, which ultimately leads to the user being blocked, or banned from accessing, Defendant's official Facebook page. This Court has already determined that the screenshots fall within the broad parameters of discoverable information. Accordingly, this Court believes that the Facebook keyword filter list offers further insight into Defendant's policy in monitoring his Facebook account, as well as offers documentary evidence as to the specific words that would trigger the filter.

Thus, because this Court deems that this request is directly relevant to Plaintiffs' claims and defenses, and lie central to the First Amendment challenges in this case, Plaintiffs' motion to compel Defendant to produce the Facebook Keyword Filter List is **GRANTED**.

**B.     Plaintiffs' Motion to Compel the Deposition of Governor Bevin**

Plaintiffs have requested one hour of testimony on three topics related to Defendant's involvement in the creation of his social media policy. As such, they seek to compel the deposition of the Governor relating to the following topics:

> a) his personal role in the formation or implementation of any policies and/or practices relating to blocking individuals on any of his social media accounts; b) his personal involvement in the practice of blocking individuals on his social media accounts; and c) his personal role in setting up and administering his social media accounts.

[R. 41 at 8-9]; [R. 46 at 11-12]. Plaintiffs' basis in seeking this request comes after having deposed several witnesses from the Governor's office, including Chief of Staff Blake Brickman. As a result of these depositions, Plaintiffs contend that Governor Bevin must possess "unique, personal, and first-hand knowledge related to the claim being litigated," and "that other persons cannot provide — and indeed, have not provided — the necessary information." [R. 41 at 9].

Both parties have argued that depositions of high-ranking individuals in their official capacities should be required only in the most extraordinary of circumstances. Similarly, both

parties have pointed to the same applicable rule on this issue. "Depositions of high-ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated." *Boudreau v. Bouchard,* No. No. 07–10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008). Nevertheless, "discovery is permitted only where it is shown that other persons cannot provide the necessary information." *Id.* (citing *In re United States (Holder)*, 197 F.3d 310, 313-14 (8th Cir. 1999)). In this case, the Court agrees with Defendant: such a circumstance warranting the Governor's deposition does not exist.

Plaintiffs argue that this deposition is critical, given that "even after multiple depositions[,] the nature of [the Governor's] involvement and [of the Governor's] understanding of these issues is still unknown." [R. 41 at 10]. Plaintiffs further argue that this insight cannot be obtained from any alternative source, and thus, they believe that this limited deposition will allow the Plaintiffs to obtain the essential information that only the Governor can properly answer. However, Plaintiffs have failed to provide more than mere conjecture and conclusory statements regarding the potential testimony of Governor Bevin, and that he is the sole source of that information. In sum, not only have Plaintiffs failed to show that the deposition of Governor Bevin is necessary or proportionate to the needs of this case, but Plaintiffs have also failed to show that the testimony given by previous witnesses, including that of Chief of Staff Blake Brickman, was in some way deficient.

For the foregoing reasons, Plaintiffs' request to depose Governor Bevin is **DENIED.**

## C. Defendant's Motion for Oral Argument

Pursuant to Local Rule 7.1(f), Defendant has argued that "Plaintiffs' Reply in support of their Motion to Compel contains misstatements of fact and law," and moves this Court for Oral Argument "to clarify these and other issues." [R. 47]. *See* LR 7.1(f) ("A party may request

10

a hearing or *oral argument* in a motion, response or reply." (emphasis added)). Plaintiffs have objected, citing to the untimeliness of Defendant's request, and arguing that he should have raised this underlying request in his response [R. 48]. This Court agrees. Not only does this Court find Defendant's Motion inextricably vague, but it was also filed nearly three weeks after its Response in Opposition to Plaintiffs' Motion to Compel [R. 45].

Therefore, Defendants Motion for Oral Argument [R. 47] is hereby **DENIED**.

### V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED AS FOLLOWS**:

1. Plaintiffs' Motion to Compel Production of the Relevant Documents [R. 41 at 2], described above, is **GRANTED**. Within seven (7) days of the issuance of this Order, Defendant shall provide Plaintiffs with the following:

    a. copies of the documents responsive to Plaintiffs' Requests for Production Nos. 7, 8, 15, and 17, including the screenshots identified in response to Plaintiffs' Interrogatory Nos. 7 and 8;

    b. the email and text message exchanges previously identified as responsive to Plaintiffs' Requests for Production Nos. 7, 8, and 15; and

    c. the Facebook keyword filter list identified as responsive to Plaintiffs' Request for Production No. 17.

2. Plaintiffs' Motion to Compel Governor Bevin's Deposition [R. 41 at 8] is **DENIED**.

**IT IS FURTHER ORDERED:**

3. Defendant's Motion for Oral Argument [R. 47] is **DENIED**.

This the 3rd day of December, 2018.



Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge