UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | | |
|---|---|---|
| DREW MORGAN; and <br> MARY HARGIS, <br> *Plaintiffs,* <br><br> v. <br><br> MATT G. BEVIN, in his official <br> capacity as Governor of Kentucky; <br> *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CASE NO. 3:17-cv-00060-GFVT <br><br> *Filed Electronically* |

**DEFENDANT'S OBJECTION TO
DECEMBER 3, 2018 OPINION AND ORDER**

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant Matt G. Bevin, in his official capacity as Governor of Kentucky, respectfully objects in part to the December 3, 2018 Opinion and Order (the "Order"), Doc # 49, ordering the Defendant to provide the Plaintiffs with screenshots, email and text message exchanges, and a Facebook keyword filter. The part of the Order that grants the Plaintiffs' Motion to Compel should be reversed because it is clearly erroneous and contrary to law.

## ARGUMENT

The Order erroneously permits the Plaintiffs to take expansive discovery that has no relation whatsoever to the claims they have pled in this case. It bears mentioning that the Plaintiffs have only pled two claims: (1) that the Governor's act, practice, or policy of blocking accounts on Facebook and Twitter is facially unconstitutional; and (2) that the Governor's act of blocking the individual Plaintiffs' social media accounts is unconstitutional as applied to them. Notably, they did not plead that the Governor's

1

Office engages in viewpoint discrimination when it blocks accounts, nor did they allege that the Governor's Office follows an unconstitutional shadow policy that differs from its stated policy. Nevertheless, they are attempting to take discovery as if they had pled such allegations. And the Order erroneously allows them to do so.

Discovery is not unlimited. To the contrary, the permissible scope of discovery is limited to information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Naturally, in order to determine what is relevant to the Plaintiffs' claims, one must look at the claims themselves. And any reasonable reading of the Plaintiffs' claims shows that information sought by the Plaintiffs is far outside the permissible scope of discovery.

At issue here are three categories of information that the Order requires the Governor's Office to produce:

(i) Screenshots of comments or replies—from accounts other than the Plaintiffs' accounts—that led to an account being blocked or banned from the Governor's official social media pages;

(ii) Emails and text messages that discuss blocking accounts that are not associated with the Plaintiffs and one text-message conversation that generally discusses blocking accounts on a date long after the Plaintiffs' accounts were blocked or banned, and long after this lawsuit was filed; and

(iii) The words in the keyword filter used on the Governor's official Facebook page.

None of this information relates in any way to the Plaintiffs or their accounts. Therefore, it obviously is not discoverable as to their as-applied challenge. And, with

respect to the Plaintiffs' facial challenge, this information is not discoverable for five reasons.

*First*, as a general matter, a First Amendment facial challenge is a "strictly legal question" for which for which there is no need to develop facts. *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008). A facial claim does not allow far-reaching discovery—or any discovery, for that matter—about how the challenged policy has been applied in every conceivable circumstance. *See id.* (holding that a facial challenge to a statute "does not involve application of the statute in a specific circumstance"). This is because a facial challenge does not require proof that the challenged policy is ever implemented in an unconstitutional manner. Instead, a facial challenge requires a plaintiff to show that there are "no set of circumstances" in which the defendant's challenged policy, on its face, is constitutional. *See United States v. Salerno*, 481 U.S. 739, 745 (1987).[1] This analysis is a strictly legal one, and therefore does not permit discovery. *See, e.g., Shelby County v. Holder*, 270 F.R.D. 16, 19 (D.D.C. 2010) ("Because

---

[1] In their briefing on the Motion to Compel, the Plaintiffs argued that the one and only test for facial unconstitutionality in the First Amendment context is the overbreadth test. That is incorrect. As the Supreme Court explained in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008), the overbreadth test is—in addition to the *Salerno* test—"a second type of facial challenge in the First Amendment context . . . ." Under the overbreadth test, "a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relations to the statute's plainly legitimate sweep.'" *Id.* The Supreme Court has held that the "'strong medicine' of overbreadth analysis" generally does not apply "where the parties fail to describe the instances of arguable overbreadth of the contested law." *Id.* Such is the case here. The Plaintiffs' Complaint makes no allegations whatsoever describing such instances. Therefore, the Plaintiffs obviously have not made—and cannot prevail—on an overbreadth claim. But even if they had pled such a claim, that still would not mean that they are entitled to take discovery on it. Whether a policy is impermissibly overbroad is a "strictly legal question." *See Kansas Judicial Review*, 519 F.3d at 1118.

Shelby County brings only a facial claim challenge to the VRA, discovery into that claim is unwarranted."); *see also Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 227 (2d Cir.1998) (stating that the plaintiff's facial First Amendment challenge "involves a purely legal question"); *Cities4Life, Inc. v. City of Charlotte*, No. 3:17-CV-670, 2018 WL 4494989, at *5 (W.D.N.C. Sept. 18, 2018) ("A facial challenge to a regulation that "has the force of law" and carries criminal or civil penalties is generally a "purely legal" question that does not require further factual development."); *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 471 (S.D.N.Y. 2004) ("all of CLASH's claims constitute facial constitutional challenges, and thus, raise only legal issues")

The Plaintiffs have framed their facial claim as follows:

> *On its face*, Defendant's official capacity act, practice and/or policy of permanently barring individuals and organizations from being able to post comments on his official Twitter and Facebook accounts is an unconstitutional restriction on their right to engage in speech (and, with respect to Twitter, to receive that information) in those public forums . . . .

[*E.g.*, DN #41 ¶ 59 (emphasis added)]. As pled, this claim alleges nothing more than that it is facially unconstitutional for the Governor's Office to permanently block social media accounts from posting on the Governor's official accounts. Under this claim, there are really only two relevant fact questions: (1) Does the Governor's Office block social media accounts?; and (2) Are blocks permanent? The Governor's Office readily admits that it blocks social media accounts. And it denies that blocks are permanent. The Plaintiffs have conducted discovery on this latter fact, and the undisputed evidence shows that the Governor's Office is willing to unblock accounts, and has in fact unblocked at least one account. No other facts are relevant to this claim. Thus, the only

4

remaining question is a purely legal one—*i.e.,* is it unconstitutional under all circumstances for the Governor's Office to block social media accounts? *See Kansas Judicial Review*, 519 F.3d at 1118. And because this is a strictly legal question, discovery is not necessary to resolve it.

*Second*, even if the Plaintiffs' facial challenge could be more broadly construed as a challenge to the Governor's articulated policy of blocking accounts that make obscene, abusive, and repeatedly off-topic comments rather than just a challenge to the act of blocking accounts, the Plaintiffs still would not be entitled to the documents they seek. To the extent that the Plaintiffs are challenging the facial constitutionality of the articulated policy, the Plaintiffs' burden is to prove that it is unconstitutional *in every circumstance* to block or ban a user account for making a comment or reply that is obscene, abusive, or repeatedly off-topic. This is a purely legal question, which means it is not one for which discovery is needed.

The Plaintiffs have failed to articulate how the withheld screenshots, text messages, and emails are relevant to proving that the social media policy on its face cannot be applied constitutionally under any set of circumstances. Their assertion that they need "robust and meaningful fact discovery" on their facial claim—a legal proposition for which they cite no case law—is contradicted by the simple fact that a facial challenge merely requires taking the challenged policy and asking whether, on its face, there are any circumstances under which the policy is constitutional. This is a "strictly legal question," as the Tenth Circuit has held. *See id.* Contrary to the Plaintiffs' assertion, a facial claim does not allow far-reaching discovery about how the challenged policy has been applied in every conceivable circumstance. *See id.* (holding that a facial

challenge to a statute "does not involve application of the statute in a specific circumstance"). Another way to think about this issue is that a facial challenge allows the Plaintiffs to challenge the Governor's social-media policy "on its face"—hence the term "facial." The Plaintiffs must accept that policy, which has been provided to them and testified about repeatedly, and show that "on its face" the policy is unconstitutional in all circumstances. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994) ("It is this employment practice that Armstrong challenges as discriminatory. Since the policy is neutral on its face (*i.e.,* it does not by its terms apply exclusively to a protected group), a claim of disparate treatment based on facial discrimination cannot be maintained.").

*Third*, what the Plaintiffs are really trying to do here is take discovery on a claim that they did not plead. Specifically, they contend that they want to take discovery so that they can prove that the Governor's Office has a shadow policy that differs from its stated policy, and that the shadow policy is facially unconstitutional because it discriminates on the basis of viewpoint—a notion that has no factual support whatsoever. It is conceivable—but by no means clear—that such a claim could be litigated, but it would certainly have to be pled first. And the Plaintiffs' Complaint contains no such claim. Why not? Probably because they had absolutely no factual basis whatsoever to make such an allegation, which means that they knew that they could not make such an allegation consistently with their obligations under Rule 11. After all, even a cursory glance at the Governor's social media accounts shows that there are a variety of viewpoints—both for and against the Governor—expressed in the comments to the posts on those accounts. But despite the fact that the Plaintiffs had no factual

6

basis whatsoever to plead the existence of a shadow policy that discriminates on the basis of viewpoint, they are now trying to get around the limitations of Rule 11 by taking discovery as if they had made such an allegation. This is not permitted. Courts do not exist so that plaintiffs can file a lawsuit just to go on a fishing expedition to find out if they actually have any basis on which they can sue. *See* Fed. R. Civ. P. 11(b)(3); *S.E.C. v. Goldstone*, 301 F.R.D. 593, 643 (D.N.M. 2014) ("A district court is not, however, 'required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.'"). That is not how the system works, but that is exactly what the Plaintiffs are trying to do here. And they should not be allowed to do it. It is improper for the Plaintiffs to seek discovery on an entirely new legal theory that they failed to plead, as their Motion to Compel tries to do. *See, e.g.*, *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("The plaintiff may not use the discovery process to obtain . . . facts [they did not plead] after filing suit."). The Plaintiffs are not allowed to skirt the limitations of Rule 11 by failing to plead a claim for which they had no factual basis, but then taking discovery as if they had pled it.

*Fourth*, in seeking the three categories of information at issue here, the Plaintiffs are essentially seeking to litigate an as-applied class action or mass action as opposed to a facial challenge. The screenshots, which document the comments that led to the blocking of particular user accounts, only show how the policy was *applied* with regard to those specific user accounts. They say nothing whatsoever about the policy—only how it has been *applied* in specific instances. Thus, the screenshots might be relevant

7

to as-applied claims, but they are certainly not relevant to a facial challenge.[2] This matters because there are only *two Plaintiffs* here. This is not a class action or a mass action involving a large number of Plaintiffs or consolidated cases. Accordingly, evidence pertaining to the application of the social media policy to specific accounts other than the Plaintiffs' accounts is irrelevant to any claim at issue here.

The same is true of the very small number of text messages and e-mails that are at issue. All but one of the withheld e-mails and text messages address blocking specific accounts—none of which are the Plaintiffs' accounts—and the remaining document, a text message, addresses blocking accounts on a particular date that is well after this lawsuit was filed. This information says nothing about the Governor's social media policy and—especially in light of the small number of documents at issue—certainly cannot establish the existence of a policy that differs from the stated policy. Instead, it would only allow the Plaintiffs to litigate as-applied claims for parties who are not before the Court. And since this is not a class action, the Plaintiffs should not be allowed to do so.

---

[2] The Plaintiffs no doubt want to see the screenshots in the hope that it will show a pattern of viewpoint discrimination in support of the unpled shadow policy claim. But even if the Plaintiffs had pled such a claim, it would be impossible for the screenshots to prove the existence of such a policy because screenshots do not exist for every account that has been blocked. Regardless, how one would ever go about proving the existence of such a shadow policy is anyone's guess. For example, if 50% of the screenshots depicted comments that were critical of the Governor, would that prove the existence of a shadow policy dictating discrimination on the basis of viewpoint? What about 45%? Or 55%? And how would that account for the fact that many critical comments appear on the Governor's social media accounts and therefore obviously have not been blocked? The bottom line is that the screenshots cannot possibly be relevant to anything other than the manner in which the social media policy has been *applied* to the particular accounts depicted in each screenshot.

*Fifth*, the keyword filter has absolutely no relation to either the facial or as-applied claims in this case. The Facebook filter is a function that permits Facebook users to automatically hide comments that contain certain keywords entered into the filter by the user. The filter function allows a Facebook user to input specific words into the filter, and if a comment is made on the user's page containing one or more of those words, that comment is automatically hidden from the general public. It does not result in the commenter being blocked. In fact, it has nothing at all to do with blocking accounts. Therefore, the Governor's Office should not be required to disclose it.

## CONCLUSION

The Plaintiffs have failed to articulate how these screenshots, text messages, emails, and the Facebook keyword filter may lead to the discovery of admissible evidence. Hypothetically, if a screenshot were to indicate that a user account was mistakenly blocked in that it did not fit one of the three identified areas of the policy, what evidence does that lead to? It cannot be used to show that the policy on its face is unconstitutional. And it cannot be used to prove that the policy was unconstitutionally applied to either of the named Plaintiffs. Instead, what the Plaintiffs are trying to do is use this information to show that the Governor's Office has some secret shadow policy that differs from its stated policy and that discriminates on the basis of viewpoint. Moreover, the Plaintiffs are trying to evade the limitations of Rule 11. They had no factual basis on which to plead such a claim—and therefore they did not plead it—but now they are trying to take discovery on this claim as if they had pled it. This is not how our system works. But the Order erroneously allows the Plaintiffs to do this. The Order—by expanding the case beyond what has been pled and disregarding whether the

documents at issue can actually lead to discoverable evidence—grants the Plaintiffs the ability to go on a fishing expedition to find out of there is any evidence to support claims that they have not made, rather than allowing them to prove the case that they pled, which the legitimate purpose of discovery.

Based upon the foregoing, the Governor respectfully requests that this Court vacate the Order and deny the Plaintiffs' Motion to Compel.

Respectfully submitted,

/s/ S. Chad Meredith
M. Stephen Pitt
S. Chad Meredith
Matthew F. Kuhn
Office of the Governor
700 Capital Avenue, Suite 101
Frankfort Kentucky  40601
(502) 564-2611 (phone)
Steve.Pitt@ky.gov
Chad.Meredith@ky.gov
Matt.Kuhn@ky.gov

Megan Kinsolving
Kentucky Labor Cabinet
657 Chamberlin Avenue
Frankfort, Kentucky 40601
(502) 564-3214
Megan.Kinsolving@ky.gov

*Attorneys for Governor Bevin*

## CERTIFICATE OF SERVICE

A true copy of the foregoing will be served electronically via ECF upon all counsel of record on this the 10th day of December, 2018.

/s/ S. Chad Meredith
Attorney for Governor Bevin